IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| CHARLES MICHAEL SHELTON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 4:11-cv-00045 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| DANVILLE POLICE DEPT., OFFICER | ) | By: Hon. Jackson L. Kiser |
| ROBBIE PAYNE, S. OAMAR,  and | ) | Senior United States District Judge |
| and SPEED WAY MART, | ) | |
| | ) | |
| Defendants. | ) | |

Before me is Defendant Danville Police Dept. ("DPD") and Defendant Officer Robbie Payne's ("Payne") Motion to Dismiss ("the Motion") [ECF No. 23]. Plaintiff Charles Michael Shelton ("Shelton"), despite being advised in the Pretrial Order that, "[e]xcept for good cause shown, if briefs in opposition to the motions are not filed, it will be deemed that the motion is well taken," failed to respond to the Motion. (Pretrial Order ¶ 4, Feb. 21, 2012 [ECF No. 13].) Nevertheless, I permitted the parties to set the Motion for a hearing. On May 7, 2012, I heard oral arguments from DPD and Payne, along with Shelton's response. Defendant S. Qamar[1] was given the opportunity to be heard, although he was not a party to the Motion. This matter is now ripe for decision. For the reasons stated below, I will **GRANT** the Motion and **DISMISS** DPD and Payne from this action. Dismissing the state actors divests this Court of jurisdiction over the remaining parties. Therefore, pursuant to Rule 12, I will also **DISMISS** Defendants Qamar and Speed Way Mart, and **DISMISS** this action in its entirety.

---

[1] Although the caption lists Mr. Qamar's name as "Oamar," he advised me at the hearing of the proper spelling and punctuation. Out of respect, I will refer to him by the proper spelling.

- 1 -

## I. STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

Plaintiff Charles Michael Shelton ("Plaintiff") alleges that he was the victim of a "brutal hate crime" on April "20th-21th [sic]." (Compl. pg. 2.)[2] Plaintiff alleges that, on the night(s) in question, he was at Defendant S. Qamar's Speed Way Mart on North Main Street in Danville, Virginia. "The nite [sic] of the attack the Safe Way Mart's security guard left the store property to check a score of a basketball game leaving the parking lot with . . . two bl[ac]k males to hassle" Plaintiff. (Compl. ¶ 9.) These individuals assaulted Plaintiff. (Compl. ¶ 10.) During the course of the assault, the individuals called Plaintiff a "white mother fucker." (Compl. ¶ 10.) During this beating, "nobody from the Speed Way Mart came to help . . . ." (Compl. ¶ 11.) Plaintiff asserts that Speed Way Mart's security cameras recorded his assault and that a tape of his beating exists. (See Compl. ¶ 3.)

Following the assault, Plaintiff reported the crime to DPD. Officers investigated the assault and apparently arrested a suspect. (See Compl. ¶ 2.) Plaintiff alleges that an individual known as "Lil Ricky Taylor" assaulted him, yet DPD instead arrested "Lil Ricky Taylor's" father, William Taylor—a man he contended at oral argument has only one leg. (See Compl. ¶¶ 2, 24.) Plaintiff alleges that DPD "had a posstive [sic] I.d. as William Taylor[']s son alais [sic] 'Lil Ricky' Taylor and it was known before the arrest of William Taylor, the police dept. had seen the serv. [sic] Tape showing 'Lil Ricky Taylor' and knew who to arrest . . . ." (Compl. ¶ 2.) Officer Payne informed Plaintiff that detectives would contact him about "the brutal beating against" him. (Compl. ¶ 1.)

As a result of the attack, Plaintiff suffered severe injuries and extensive medical bills. (See Compl. ¶ 15.) Since the attack, "[t]he Speed Way Mart is still allowing young bl[ac]k

---

[2] Facts are taken from Plaintiff's *pro se* complaint and are, for the purposes of the Motion, presumed to be true.

males to hang out in front of the store." (Compl. ¶ 14.) Plaintiff alleges DPD and Officer Payne are liable for failing to investigate this crime appropriately and for failing to arrest the actual culprit. (See Compl. ¶ 19.) The Speed Way Mart, and presumably its owner, S. Qamar, are "at fault for allowing the outside of the store for a hang out as well as drinking and drug sales[.]" (Compl. ¶ 17.)

Plaintiff originally sought to proceed *in forma pauperis*, but I denied his request to do so because I believed his Complaint "fail[ed] to state a federal claim." [ECF No. 2.] Nevertheless, Plaintiff paid the requisite filing fee on October 21, 2011. On February 17, 2012, DPD and Officer Robbie Payne filed their Answer. [ECF No. 10.] In it, they assert that DPD is *non sui juris*, that Officer Payne is immune from suit under the doctrines of sovereign and qualified immunity, and that Plaintiff's Complaint fails to state a claim pursuant to Rule 12(b)(6). (DPD/Payne Ans. ¶¶ 30-32.) They subsequently filed a Rule 12(b)(6) Motion to Dismiss on March 30, 2012. See FED. R. CIV. P. 12(h)(2).

Defendant S. Qamar filed an Answer on February 21, 2012, stating:

> My name is Shahuq Qamar. I can not afford LAWYER because I have no business. TODAY IS MY APPEAR [sic] DATE I have to FILE MY ANSWER.

(S. Oamar Ans. pg. 1 [ECF No. 11.]) No further information was given. Because the Complaint alleged S. Qamar owned the Speed Way Mart (see Compl. pg. 1), the Clerk filed the Answer as a joint Answer on behalf of both Defendants.

After DPD and Officer Payne filed their Motion to Dismiss, the Clerk sent Plaintiff a Roseboro notice on April 2, 2012, informing him of his obligation to respond and that his failure to do so could be construed as a "failure to prosecute" his claims. [ECF No. 24.] In addition, prior to DPD and Payne's filing of the Motion, I entered a Pretrial Order which stated, in

- 3 -

pertinent part, that "[b]riefs in opposition must be filed within 14 days of the date of service of the movant's brief . . . . **EXCEPT FOR GOOD CAUSE SHOWN, IF BRIEFS IN OPPOSITION TO THE MOTIONS ARE NOT FILED, IT WILL BE DEEMED THAT THE MOTION IS WELL TAKEN**."  (Pretrial Order ¶ 4, Feb. 21, 2012 [ECF No. 13].) Despite Plaintiff's assertions to the contrary at oral argument, he never filed a response.

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 149.  In determining facial plausibility, the Court must accept all factual allegations in the complaint as true.  Iqbal, 129 S. Ct. at 1949.  The Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (internal quotation marks omitted).  Therefore, the Complaint must "allege facts sufficient to state all the elements of [the] claim." Bass v. E.I. Supont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003).  Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.  "If the non-moving party has the burden of proof at trial, that party must set forth facts 'sufficient to establish the existence of an element essential to that party's

- 4 -

case.'"  Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 201 (3rd Cir. 2006) (quoting Celotrex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

Additionally, Plaintiff's status as *pro se* requires me to construe his Complaint liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  "[A] *pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers' . . . .'"  Estelle, 429 U.S. at 106 (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Cf. Fed. R. Civ. P. 8(e) ("Pleadings must be construed as to do justice.").  This standard does not, however, permit me to allow an action to proceed when a plaintiff has failed to state a claim against the named parties.

### III. ANALYSIS

At the outset, I note that Plaintiff was informed on at least two occasions of his responsibility to respond to the Motion.  In the Pretrial Order, he was explicitly warned that failing to file a brief in opposition to any motion would result in the motion being deemed well-taken.  On this basis alone, I would be justified in assuming that Plaintiff agreed with DPD and Officer Payne's contentions and granting the Motion.  Moreover, after the Motion was filed, the Clerk informed Plaintiff:

> This case is before the Court pursuant to Defendants' Motion to Dismiss filed March 30, 2012.  The Court will give Plaintiff fourteen (14) days from the date of this Notice to submit any further counter-affidavits or other relevant evidence contradicting, explaining or avoiding  Defendants' evidence. . . . If Plaintiff does not respond to Defendants' pleadings, the Court will assume that Plaintiff has lost interest in the case, and/or that Plaintiff agrees with what the Defendants state in this responsive pleading(s).  If Plaintiff wishes to continue with the case, it is necessary that Plaintiff respond in an appropriate fashion. . . . [I]f Plaintiff does not file some response within the fourteen (14) day period, the Court may dismiss the case for failure to prosecute.

(Notice, April 2, 2012 [ECF No. 24]).)  Despite this additional warning, Plaintiff still did not respond.  His mere appearance at oral argument to oppose the Motion does not constitute compliance with the Orders.  Although these bases, standing alone, would support granting the Motion and dismissing DPD and Officer Payne, I will nevertheless decide the Motion on the merits.

In their Brief in Support of the Motion, DPD and Officer Payne raise two arguments in support of dismissing the Complaint under Rule 12(b)(6).  First, they contend that DPD is *non sui juris*, meaning it does not have the capacity to be sued.  See Trantham v. Henry County Sheriff's Office, et al., No. 4:10-cv-00058, slip op. at pg. 9 (W.D. Va. Mar 10, 2011) (citing Rutledge v. Town of Chatham, 4:10-cv-00035, 2010 WL 3835662, at *1 (W.D. Va. Sept. 30, 2010) (noting that "[l]ocal police and sheriff's departments . . . do not have the capacity to be sued" under Virginia law).  They are correct.[3]

DPD is *non sui juris* and is therefore not amenable to suit.  See Muniz v. Fairfax County Police Dep't., No. 1:05-cv-00446, 2005 WL 1838326, at *2 (E.D. Va. Aug. 2, 2005) ("In Virginia, an operating division of a governmental entity cannot be sued unless the legislature has vested the operating division with the capacity to be sued. . . . Since the Fairfax County Police Department has no legal existence separate and apart from Fairfax County, and the Code of Virginia does not provide that it can be sued as a separate entity, Fairfax County Police Department is not capable of being sued.").  DPD has no existence apart from the City of Danville, and therefore may not be sued directly.  Accordingly, the Complaint must be dismissed as to DPD.

---

[3] At oral argument, Plaintiff contended that DPD is "not immune from prosecution," which I take to mean it may be sued civilly.  He offered nothing to support this assertion, and I am not aware of any Virginia law that supports it.

Second, Defendants argue that Plaintiff fails to state any affirmative duty on Officer Payne's part for which a failure to perform the duty could result in liability. They note that police's failure to act does not constitute a Constitutional violation in the absence of some special relationship between the defendant officer(s) and a plaintiff. See Town of Castle Rock v. Gonzales, 545 U.S. 748 (2005). "The Due Process Clause of the Fourteenth Amendment does not require governmental actors to affirmatively protect life, liberty, or property against intrusion by private third parties." Pinder v. Johnson, 54 F.3d 1169, 1174 (4th Cir. 1995). For this reason, Defendants argue, the Complaint should be dismissed against both DPD (assuming it is *sui juris*) and Officer Payne.

As for Officer Payne, Defendants fail to note that the Complaint only mentions him once. In Paragraph 1 of the Complaint, Plaintiff alleges: "I was told by Officer Robbie Payne that detectives would contact me about the brutal beating against myself and my brother Donald Shelton." (Compl. ¶ 1.) Plaintiff does not mention Officer Payne again until the presumed *ad damnum* clause. (See id. ¶ 29.) Even if a generic federal cause of action against police officers for failing to act existed (which it does not), Plaintiff fails to allege any facts against Officer Payne which would give rise to liability under Iqbal.[4]

Moreover, even if the allegations against Officer Payne were adequately fleshed out to support his contention that Officer Payne did not adequately investigate this crime, Plaintiff has no Constitutionally protected property or liberty interest in police protection under the Due Process Clause of the Fourteenth Amendment. Cf. Town of Castle Rock v. Gonzales, 545 U.S.

---

[4] The only reference to Officer Payne is that Payne told Plaintiff he would contact him. "Promises do not create a special relationship" sufficient to afford Plaintiff a Constitutionally protected property interest sufficient to withstand Defendants' Motion. Pinder v. Johnson, 54 F.3d 1169, 1175 (4th Cir. 1995) (holding that a promise to incarcerate an individual overnight did not create the requisite "special relationship" to give rise to a duty on the part of the police; the individual in question returned to Pinder's home that night and set it on fire, killing Pinder's three children).

748, 768 (2005) (holding that there is no Due Process claim for failing to enforce a spousal protection order); DeShaney v. Winnebago Co. Dept. of Social Servs., 489 U.S. 189, 195 (1989) ("[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security."). It follows, then, that if Plaintiff has no constitutional right to police protection,[5] then he certainly has no right to the police protection he deems adequate and effective. (He claims that DPD and Officer Payne violated his rights by failing to arrest the proper assailant.) As a result, he has not stated a claim against DPD or Officer Payne, and the Motion should be granted as to both parties.

Once the so-called state defendants—the presumed anchors for jurisdiction under 28 U.S.C. § 1331—are dismissed, I am left to consider whether this Court has jurisdiction over the remaining defendants, S. Qamar and Speed Way Mart.

Federal courts are courts of limited jurisdiction, meaning that I cannot exercise jurisdiction over a case unless there is specific authority in the Constitution or the United States Code authorizing me to do so. See Liberty University, Inc. v. Geithner, 671 F.3d 391, 401 (4th Cir. 2011). The power of the court "is not to be expanded by judicial decree." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). "Accordingly, a federal court has an independent obligation to investigate the limits of its subject-matter jurisdiction. This is so even when the parties 'either overlook or elect not to press' the issue . . . ." Liberty, 671 F.3d at 401

---

[5] Admittedly, when a "special relationship" exists between a party and the police, a liberty or property interest may be implicated. See Pinder, 54 F.3d at 1174 ("The DeShaney Court did indicate that an affirmative duty to protect may arise when the state restrains persons from acting on their own behalf.). No such relationship is at issue here. See id. ("The specific source of an affirmative duty to protect, the Court emphasized, is the custodial nature of a 'special relationship.'").

(quoting Henderson v. Shinseki, 131 S. Ct. 1197, 1202 (2011)). The "obligation to examine . . . subject-matter jurisdiction is triggered whenever that jurisdiction is 'fairly in doubt.'" Id. (quoting Iqbal, 129 S. Ct. at 1945). To that end, Federal Rule of Civil Procedure 12 admonishes me as follows: "If the court determines at any time that it lacks subject-matter jurisdiction, the court **must** dismiss the action." FED. R. CIV. P. 12(h)(3) (emphasis added).

The only conceivable claim against the remaining defendants is a common-law action for negligence.[6] If the alleged federal causes of action against the government defendants are dismissed, supplemental jurisdiction over the state actions against Qamar and Speed Way Mart does not exist. Therefore, the only basis for exercising jurisdiction over those parties is diversity jurisdiction, see 28 U.S.C. § 1332 (2011).

Diversity of the parties (for purposes of subject-matter jurisdiction) is determined at the time the action is commenced. See Rowland v. Patterson, 882 F.2d 97, 98 (4th Cir. 1989) (citing Mollen v. Torrance, 22 U.S. (9 Wheat.) 537 (1824); Connolly v. Taylor, 27 U.S. (2 Pet.) 556 (1829)) ("From the beginning of diversity jurisdiction, the rule in actions commenced by plaintiffs in federal court has been that the citizenship of the parties at the time of commencement of the action determines whether the requisite diversity exists."); see also Porsche Cars North America, Inc. v. Porsche.net, 302 F.3d 248, 255-56 (4th Cir. 2002) ("[I]t is black-letter law that the conditions that create diversity jurisdiction . . . need *not* survive through the life of the litigation. Rather, a court determines the existence of diversity jurisdiction 'at the time the action is filed,' regardless of later changes in originally crucial facts such as the parties' citizenship or the amount in controversy."). An action is commenced in federal court by filing the complaint. FED. R. CIV. P. 3.

---

[6] This conclusion is supported by Plaintiff's statement in Paragraph 17 of the Complaint: "The Speed Way Mart is at fault for allowing the outside of the store for a hang out as well as drinking and drug sales!!" (Compl. ¶ 17.)

- 9 -

Although Plaintiff now lists Myrtle Beach, South Carolina, as his permanent address, he listed Danville, Virginia, as his address when he filed his Complaint. (See Compl. pg. 9.) Therefore, diversity does not exist among the remaining parties because both remaining defendants reside in Virginia, and Plaintiff was a resident of Virginia at the time he commenced this action. The action must therefore be dismissed against Defendants S. Qamar and Speed Way Mart pursuant to Rule 12(b)(1).

## IV.　CONCLUSION

Because DPD is *non sui juris*, Plaintiff is unable to state a claim against that entity. Therefore, the Motion must be **GRANTED** with respect to DPD. Additionally, because the allegations against Officer Payne do not give rise to a federal Constitutional violation, the Motion will also be **GRANTED** as to Officer Payne. Finally, because I do not have jurisdiction over any remaining claims against the remaining defendants, the remaining action must be **DISMISSED**. The Motion is **GRANTED** in its entirety, and the Complaint is **DISMISSED** pursuant to Rule 12(b)(1). The clerk is directed to remove this case from the active docket of the Court.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record and to all *pro se* parties.

Entered this 8th day of May, 2012.

s/Jackson L. Kiser
SENIOR UNITED STATES DISTRICT JUDGE